UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| FRANKETTA HOGAN, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>NORTHERN INDIANA PUBLIC )<br>SERVICE CO., )<br>)<br>Defendant. ) | CAUSE NO. 2:19-CV-412-PPS-JPK |

## **OPINION AND ORDER**

Franketta Hogan is a former employee of NIPSCO who was terminated from her job back in 2019.  She says her termination is linked to her being disabled and because she exercised her rights under the Family Medical Leave Act.  NIPSCO says it sacked her because she lied on her leave forms.  In a four-count complaint, Hogan brings claims under both the Americans with Disabilities Act and the FMLA. She also brings two supplemental state law claims for invasion of privacy and intentional infliction of emotional distress.  NIPSCO moves to dismiss the entire complaint under Rule 12(b)(6). Because I find Hogan has properly stated claims under the ADA, FMLA, and intentional infliction of emotional distress, the motion to dismiss will be denied as to these claims.  Only the claim for invasion of privacy will be dismissed but the dismissal will be without prejudice.

**Background**

Here are the facts taken from the complaint which I accept as true at this point.

Hogan began working for NIPSCO in April 2013. [Compl., DE 1, ¶ 13.] Hogan worked as either a customer service representative or in NIPSCO's mailroom. [*Id.* ¶ 14.] Hogan alleges throughout her employment with NIPSCO, she met or exceeded their legitimate employment expectations and received satisfactory performance evaluations and regular pay increases. [*Id.* ¶ 15.]

Hogan suffers from chronic Gastroesophageal Reflux Disease ("GERD") and chronic Peptic Ulcer Disease ("PUD"). [*Id.* ¶ 16.] She takes regular medication for these conditions and receives regular medical treatment as well. [*Id.*] According to Hogan, these conditions are episodic in nature and "GERD and PUD flare-ups can be debilitating and affect her ability to work." [*Id.*] Hogan's GERD and PUD are exacerbated by stress. [*Id.*] Hogan believes NIPSCO was aware of her disabilities because she requested and was approved for intermittent FMLA leave in 2014. [*Id.* ¶ 17.]

In 2019, Hogan missed several days of work due to her conditions. Hogan was absent from work the following days in 2019: January 9-11, January 21-22, February 27, March 15, and March 18-20. [*Id.* ¶¶ 18, 20, 25, 27.] After being absent from work on January 9, 2019, Hogan went to see her doctor, Dr. Madoori, the next day (January 10th). [*Id.* ¶ 18.] During that visit, Dr. Madoori completed NIPSCO's Sick Leave Claim Form requesting that Hogan be excused from work January 9-11. [*Id.*] Dr. Madoori also scheduled an appointment to conduct tests on Hogan for January 21st. [*Id.*] That same day (January 10), Dr. Madoori knew he would be on vacation for Hogan's testing

2

appointment scheduled for January 21, so he filled out a second Sick Leave Claim Form in anticipation of Hogan's future absence from work. [*Id.*]

Hogan attended her testing appointment and was absent from work on January 21-22. On January 23, Hogan submitted her Sick Leave Claim Form to NIPSCO's sick leave coordinator, Cynthia Owens. [*Id.* ¶ 21.] Owens sent Hogan an e-mail on February 4th informing Hogan that her request for sick leave was pending and contingent on a review of her medical records by NIPSCO's doctor. [*Id.* ¶ 22.] Owens attached a medical authorization and release form to her e-mail, and asked Hogan to complete the form and provide it to Dr. Madoori so that he could provide copies of Hogan's medical records to NIPSCO. [*Id.*]

In response to the e-mail, Hogan requested and received an extension up until February 20 to provide her medical records to NIPSCO (because Dr. Madoori was still on his extended vacation). [*Id.* ¶ 23.] On February 19th, Hogan learned that Dr. Madoori remained on vacation and would not return for a few more weeks. [*Id.*] So Hogan sent Owens an email requesting additional time to submit her medical records. [*Id.*] In response to the request for additional time, Owens asked Hogan to provide documentation showing Dr. Madoori had been out of the office. [*Id.*] Hogan claims she couldn't provide any such documentation, because Dr. Madoori had not even returned from his vacation yet. [*Id.*] During this time, Hogan didn't have any further verbal or written communication with Owens or Krista Anderson (who was in the NIPSCO HR department and was included on some of the emails between Owens and Hogan). [*Id.*

3

¶ 24.]

On February 27, 2019, Hogan sought medical treatment from a doctor at Miller Beach Urgent Care in Gary, Indiana, since her regular doctor (Dr. Madoori), was still on vacation. [*Id.* ¶ 25.] Miller Beach Urgent Care completed a Sick Leave Claim Form and Hogan submitted it to NIPSCO. [*Id.*]

Dr. Madoori finally returned from his vacation, and on March 8th, Hogan visited him for treatment and to discuss the medical records NIPSCO had requested the previous month. [*Id.* ¶ 26.] During her appointment, Dr. Madoori told Hogan that employees from NIPSCO including Owens, Anderson, and NIPSCO corporate security Jim Miller, had come to his office and demanded he provide copies of Hogan's medical records. [*Id.*] Dr. Madoori refused to provide the records because Hogan had not yet executed an authorization for the records to be released. [*Id.*] No one from NIPSCO had told Hogan about the visit to her doctor - she learned this information directly from Dr. Madoori. [*Id.*]

Hogan was absent from work on March 15, and 18-20 due to her medical conditions. [*Id.* ¶ 27.] On March 19th, Hogan submitted FMLA paperwork to Owens requesting intermittent FMLA for her medical conditions, including FMLA protection for her March 18-20 absences. [*Id.* ¶ 28.]

On March 21, Hogan and Owens discussed her absences from work on January 21-22. [*Id.* ¶ 29.] This was the first time anyone from NIPSCO had communicated with Hogan about her January 21-22 absences since February 25th. [*Id.*]

4

On March 25th, Owens sent Hogan a letter acknowledging her March 19th FMLA leave request, and requesting that she execute an authorization for her doctor to provide medical records to NIPSCO for review to determine her FMLA eligibility. [*Id.* ¶ 30.]

On March 26th, Hogan was asked to attend a meeting with her supervisor (Tawana Tucker) and Anderson. [*Id.* ¶ 31.] The complaint alleges that "[d]uring the meeting, Hogan learned for the first time that NIPSCO believed that she had falsified the 'Sick Leave Claim Form' for her absences on January 21-22. During the meeting, Hogan was terminated effective March 27, 2019." [*Id.*]

Hogan filed her four-count complaint on February 4, 2020. She alleges disability discrimination under the ADA (Count I), violation of the FMLA (Count II), invasion of privacy (Count III), and intentional infliction of emotional distress (Count IV). NIPSCO filed an amended motion to dismiss the complaint in its entirety.

**Discussion**

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While I must accept all factual allegations as true and draw all reasonable inferences in the complainant's favor, I don't need to accept threadbare legal conclusions supported by purely conclusory statements. *See Iqbal*, 556 U.S. at 678. Hogan must allege "more than

5

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Making the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  Finally, "a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) 'tests the sufficiency of the complaint, not the merits of the case.'" *Tarzian v. Kraft Heinz Foods Co.*, No. 18 C 7148, 2019 WL 5064732, at *2 (N.D. Ill. Oct. 9, 2019) (quoting *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012)).

**I.     ADA Discrimination Claim**

NIPSCO first argues that Hogan's discrimination claim under the ADA should be dismissed because she has essentially pleaded herself out of court.  To properly plead an ADA claim, a plaintiff must allege 1) that she is either disabled, has a record of a disability or is perceived to be disabled; 2) that she is nevertheless qualified to perform the essential functions of her job either with or without reasonable accommodation; and 3) she "has suffered an adverse employment action because of [her] disability."  *Tate v. SCR Med. Transp.*, 809 F.3d 343, 345 (7th Cir. 2015).  An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibility, or a decision causing a significant change in benefits."  *Lewis v. City of Chicago*, 496 F.3d 645, 653 (7th Cir. 2007).

Here, Hogan alleges she was a qualified individual with a disability and that

NIPSCO "terminated Hogan because of her disability and/or record of a disability and/or because it perceived her to be disabled." [Compl. ¶¶ 34, 36.] However, NIPSCO argues that Hogan *admits* she was fired because NIPSCO believed she falsified her sick leave claim form relating to the January 21-22, 2019 absences, so she *cannot* prove she was terminated because of her disability. [DE 22 at 8.] If NIPSCO's argument seems a little too facile, that's because it is. As I mentioned earlier, the particular sentences in the complaint state as follows: "[d]uring the meeting, Hogan learned for the first time that NIPSCO believed that she had falsified the 'Sick Leave Claim Form' for her absences on January 21-22. During the meeting, Hogan was terminated effective March 27, 2019." [Compl. ¶ 31.] I just don't read these allegations of the complaint as Hogan conceding that she was fired because NIPSCO thought she falsified her sick leave form.

This controversy might ultimately boil down to the fact that the ADA does not recognize mixed-motive claims (or cases where an employer had both legal reasons and illegal reasons for taking adverse action against an employee). *See Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 962 (7th Cir. 2010) ("a plaintiff complaining of discriminatory discharge under the ADA must show that his or her employer would not have fired him but for his actual or perceived disability; proof of mixed motives will not suffice."). In its surreply, Hogan explained that, "[t]o be clear: Plaintiff does not admit that NIPSCO fired her because it believed she falsified the Sick Leave Claim form, she is not advocating a mixed-motive approach, and she is not accepting the purported

7

falsification of the Sick Leave Claim form as the true reason for her termination." [DE 25-1 at 4.] Hogan has plausibly alleged that NIPSCO fired her because of her disability and she has stated a claim for relief under the ADA. At this stage of the proceedings, that is all that is required to survive dismissal.

NIPSCO also argues that if Hogan's ADA claim survives, it should be limited to the allegations contained within the scope of her EEOC charge. Specifically, NIPSCO claims Hogan's ADA claim should be limited to her termination only, and the disparate treatment referenced in the complaint should be excluded because Hogan's EEOC charge limits her claims. Aside from the termination, the complaint also alleges that NIPSCO "subjected Hogan to disparate treatment because of her disability and/or record of a disability and/or because it perceived her to be disabled." [Compl. ¶ 35.]

The EEOC charge states that the earliest and latest the discrimination took place was March 29, 2019, which is a little odd since the complaint alleges she was told during the meeting on March 26, 2019, that her termination was effective March 27, 2019. [DE 22-1 at 2; Compl. ¶ 31.] But then Hogan describes the particulars in her EEOC charge as follows:

> In October, 2018, I bid on the position of Customer Service Representative in Gary, Indiana. After I began working the position my disability flared up and I needed to request time off as an accommodation. I saw my physician on January 10, 2019 and was subsequently put out on leave. On February 4, 2019, I was notified by Cindy Owen [sic], Leave Coordinator, that I needed a 'medical review.' I was then accused of filling out the physician portion of the form myself and falsifying prescriptions. On March 26, 2019, my employment was terminated.

8

[DE 22-1 at 2.] NIPSCO has attached an email chain among counsel discussing the adverse action for which Hogan is pursuing damages, but since this is a motion to dismiss, I won't consider outside evidence. Fed. R. Civ. P. 12(d); *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

Instead, it is more appropriate to look at the general principles of law. "[T]o determine whether allegations in Plaintiff's Complaint fall within the scope of the earlier EEOC Charge," the Seventh Circuit has considered "whether the allegations are like or reasonably related to those contained in the charge." *Conley v. Vill. of Bedford Park*, 215 F.3d 703, 710 (7th Cir. 2000) (quotation marks omitted). Here, the EEOC charge and the complaint basically involve the same conduct and the same individuals. That is sufficient. *See Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994). Hogan states she:

> [C]oncedes that the adverse action she is seeking damages for is from her termination and that it was disparate treatment; however, that does not mean she should be foreclosed from relying on other examples of disparate treatment detailed in the Complaint (and, despite Defendant's protestations, her EEOC charge also contains examples of treatment that may be different than non-disabled employees - discovery will tell the tale) as evidence of discrimination.

[DE 25-1 at 7.] I'm not going to handcuff Hogan at this stage of the proceedings to putting her case on in a certain way. The EEOC Charge sufficiently put NIPSCO on notice of the events and conduct at issue, and at this early stage of the proceedings, the allegations are sufficient to survive.

**II.    FMLA Claim**

There are two types of claims for violations under the FMLA: interference claims and retaliation claims. *Cole v. Major Hosp.*, No. 1:14-CV-549-SEB-DML, 2014 WL 6977296, at *4 (S.D. Ind. Dec. 5, 2014); 29 U.S.C. § 2615. Count II of the complaint, for violations of the FMLA, incorporates both categories. The parties spend the majority of their time briefing the FMLA interference claim, so I'll start there. To prevail on an FMLA interference claim, Hogan must prove that: (1) she was eligible for FMLA protections, (2) NIPSCO was covered by the FMLA, (3) she was entitled to FMLA leave, (4) she provided sufficient notice of her intent to take leave, and (5) NIPSCO denied her FMLA benefits to which she was entitled. *Guzman v. Brown Cnty.*, 884 F.3d 633, 638 (7th Cir. 2018); *Goelzer v. Sheboygan Cnty., Wisconsin*, 604 F.3d 987, 993 (7th Cir. 2010). NIPSCO argues that Hogan has not, and cannot, plead the fifth factor, because NIPSCO never actually denied Hogan's leave request. This argument misses the mark.

Employers are prohibited from wrongfully denying leave, but they are also prohibited from "interfering with" FMLA rights by "using the taking of FMLA leave as a negative factor in employment actions and discouraging an employee from using such leave." *Baer v. Wabash Ctr., Inc.*, No. 4:15-cv-94-JEM, 2016 WL 1610590, at *2 (N.D. Ind. Apr. 21, 2016) (quoting *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 818 (7th Cir. 2015)). Thus it is not necessary for Hogan to allege that her leave requests were denied. She does allege that on some occasions NIPSCO failed to inform her an absence may have qualified for FMLA protection, NIPSCO employees traveled to Hogan's doctor unannounced and demanded Hogan's medical records, and it questioned

10

Hogan's honesty about her absences after she requested FMLA leave. [Compl. ¶¶ 19, 21, 22, 26.] A reasonable fact finder could determine that these actions have the result of discouraging Hogan from using FMLA leave. Therefore, Hogan has met the pleading requirements for an FMLA interference claim.

Turning to the FMLA retaliation claim, NIPSCO argues that Hogan's complaint "belies her FMLA retaliation claim because, as Plaintiff alleges, NIPSCO terminated Hogan not in retaliation for submitting FMLA paperwork, but because it believed she falsified a Sick Leave Claim Form." [DE 22 at 11.] This argument fails for the same reason its counterpart argument failed with the ADA claim. There is still a possibility that Hogan can prove NIPSCO retaliated against her for taking FMLA leave when it fired her. The fact finder will have to determine whether the real reason for her termination was falsifying the forms, or illegal action under the FMLA - that is not the court's purview.

### III.  State Law Claims - Invasion of Privacy and Intentional Infliction of Emotional Distress

Turning to the two state law claims, NIPSCO contends they are both preempted by the Labor Management Relations Act ("LMRA") and that Hogan has failed to state a claim for both. This argument is a closer call than the ADA and FMLA claims. The LMRA "displaces a state-law claim if resolution of the claim requires the interpretation of a collective-bargaining agreement." *Filippo v. N. Indiana Pub. Serv. Corp., Inc.,* 141 F.3d 744, 750 (7th Cir. 1998) (quotation omitted). "If a federal court's analysis must

11

delve into a collective bargaining agreement to determine the outcome of the case, then it is preempted by § 301 of the LMRA and should be dismissed." *Ani-Deng v. Jeffboat LLC*, No. 4:12-cv-84-SEB-TAB, 2013 WL 3155599, at *6 (S.D. Ind. June 19, 2013), *aff'd*, 777 F.3d 452 (7th Cir. 2015).

Preliminarily, I note that even though NIPSCO attached the Collective Bargaining Agreement to its motion, it is inappropriate for me to consider it on this motion to dismiss. [DE 22-3.] When parties seeking dismissal submit documents along with their motions to dismiss, generally, courts can either exclude the documents or convert the motion to one for summary judgment. Fed. R. Civ. P. 12(d); *Tierney*, 304 F.3d at 738. The exception to this general rule is that a court can consider documents attached to a motion to dismiss if they are part of the pleadings referred to in the complaint, and central to the claim. *See Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009).

NIPSCO argues that Hogan referenced the CBA in her complaint when she referred to NIPSCO's sick leave claim form (which is an exhibit in an appendix of the CBA). I think this is a bit of a stretch. While it is true that documents that are "referred to in the plaintiff's complaint and are central to [her] claim" are considered part of the pleadings, *Menominee Indian Tribe of Wisconsin v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998), Hogan never referred to the CBA in the complaint or mentioned that the sick leave claim form was part of the CBA. At this point, it is difficult to determine whether the sick leave claim form is central to either her invasion of privacy or intentional

12

infliction of emotional distress claims. On the face of the complaint the gist of these allegations appear to be limited to the conduct of the NIPSCO employees when they traveled to Hogan's doctor's office in an ambush-style and demanded the disclosure of her medical documents.

In support of its contention that these tort claims require interpretation of the collective bargaining agreement and are therefore preempted by the LMRA, NIPSCO relies upon *Filippo.* 141 F.3d 744. While there are certainly some similarities between *Filippo* and this case, it is distinguishable for the point that NIPSCO is trying to make. Plus, *Filippo* was decided on a motion for summary judgment, not a motion to dismiss. The plaintiff in *Filippo* was a NIPSCO customer service representative and a member of the union, like Hogan. She brought claims for violation of the LMRA and intentional infliction of emotional distress. *Id.* at 746. In looking at the claim for intentional infliction of emotional distress, the Court found that "[t]o determine whether NIPSCO's or the Union's behavior was 'extreme or outrageous' would necessarily require an interpretation of the CBA." *Id.* at 750. The court reasoned that it would have to review the Union's approach to Filippo's grievances, and look to the CBA to determine whether the managers were over-supervising Filippo, whether the absenteeism policy was sanctioned by the CBA, and whether training by an outside consultant without Union representation was prohibited. *Id.* The *Filippo* court found that resolution of the state-law claim would require interpretation of the CBA. *Id.* As in *Filippo*, the issue of preemption is best left for the summary judgment phase of litigation.

13

In any event, it strikes me that this case is more similar to *Keehr v. Consol. Freightways of Delaware*, 825 F.2d 133 (7th Cir. 1987), than *Filippo*. Keehr was a dockman who got into a physical and verbal altercation with his supervisor when the supervisor insulted Keehr's wife, which was all part of a supposed plan to get Keehr fired. The Seventh Circuit rejected the preemption argument, stating plaintiff's claims were "based on the abusive manner in which the plan to get [the plaintiff] fired was carried out, not a claim based on the plan itself." *Id.* at 136. Similarly, in this case, Hogan's claims are based on the actions of the NIPSCO employees going to her doctor's office and demanding her medical files, not anything to do with her employment agreement between NIPSCO and herself.

In sum, given the present procedural posture of this case, I can't see why the CBA would need to be analyzed to determine whether NIPSCO committed an invasion of privacy or intentional infliction of emotional distress. Hogan isn't claiming that her termination itself was the source of these state tort claims – rather, the claims stem from the actions taken by NIPSCO agents in going to her doctor's office and demanding her medical information. Based on the facts as alleged in the complaint, a fact finder would not need to interpret the terms of the CBA to determine whether these actions constitute an invasion of privacy or are outrageous enough to constitute a claim for intentional infliction of emotional distress. Perhaps discovery will prove this to be incorrect. But at this point, I cannot say that Hogan's state law claims are preempted by the LMRA. Of course, NIPSCO may raise this argument again on summary judgment if it uncovers

14

further facts in support of its preemption theory.

So now I turn my attention to the substance of the state law claims. The tort of invasion of privacy has four separate theories of liability under Indiana law: (1) unreasonable intrusion upon the seclusion of another, (2) appropriation of the other's name or likeness, (3) public disclosure of private facts, and (4) false light publicity. *Odongo v. Brightpoint N. America, L.P.*, No. 1:16-cv-00685-TWP-DML, 2018 WL 4539265, at *11 (S.D. Ind. Sept. 21, 2018); *see also Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 593 (Ind. 2001). Hogan has made clear that she is only pursuing a claim under the intrusion upon seclusion theory. [DE 23 at 15.]

In support of that theory, Hogan cites *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991), for the holding that the plaintiff must demonstrate an "intrusion upon the plaintiff's physical solitude or seclusion as by invading his home or conducing an illegal search." Yet in *Cullison*, the plaintiff arrived home and discovered five people in his darkened living room when he turned on the light in his house. Hogan also cites *Young v. Harbor Motor Works, Inc.*, No. 2:07-CV-31 JVB, 2009 WL 187793, at *9 (N.D. Ind. Jan. 27, 2009), but in that case, the court dismissed plaintiff's invasion of privacy claim when defendant obtained plaintiff's credit report, finding that "Indiana law simply does not support a claim for invasion of privacy for intrusion upon seclusion based on these facts given that there is no allegation of physical contact or of an invasion of Young's physical space." There are no allegations of physical contact or invasion of Hogan's home in this case either, and Hogan provides no caselaw in support of her bald

15

assertion that the NIPSCO employees' actions of barging into the doctor's office qualify as an illegal search for purposes of an invasion of privacy claim.

Consequently, I will grant the motion to dismiss as to Count III for invasion of privacy. However, I do recognize that the Seventh Circuit has instructed when a plaintiff's complaint is dismissed under Rule 12(b)(6) the general rule is to give at least one opportunity to amend the complaint before the action is dismissed. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519 (7th Cir. 2015). Count III will be dismissed, and while I have substantial doubts whether any claim would be viable under an invasion of privacy theory, the dismissal will be without prejudice. Hogan is granted leave to re-file Count III if she chooses, and cure the pleading deficiencies, if she can, as discussed in this opinion.

This brings us to the last count in the complaint for intentional infliction of emotional distress. Indiana recognizes the tort of intentional infliction of emotional distress as (1) "extreme and outrageous" conduct that (2) intentionally or recklessly (3) causes (4) severe emotional distress to another. *Creel v. I.C.E. & Assocs., Inc.*, 771 N.E.2d 1276, 1281-82 (Ind. Ct. App. 2002). NIPSCO argues that the alleged conduct in this case falls short of the extreme and outrageous requirement. That strikes me as an issue best left for either the summary judgment phase of litigation or trial. Hogan tells me in the complaint that NIPSCO agents barged into her doctor's office unannounced and demanded her medical files. It is enough to say at this point that it is at least plausible that this conduct could be deemed extreme or outrageous, and that is all that needs to

be said at about it for now. *See, e.g., Bradley v. Hall*, 720 N.E.2d 747, 753 (Ind. Ct. App. 1999) (denying summary judgment where "[r]easonable persons may differ on the questions of whether [defendant's] conduct was extreme and outrageous and, if so, whether that conduct caused [plaintiff] to suffer severe emotional distress."); *Trahanas v. Northwestern Univ.*, No. 15-CV-11192, 2017 WL 2880879, at * 8 (N.D. Ill. Jul. 6, 2017) (denying motion to dismiss claim for intentional infliction of emotional distress where drawing all inferences in favor of the plaintiff, the court found the complaint could state extreme and outrageous conduct). As such, the motion to dismiss is denied as to this count.

**Conclusion**

For the aforementioned reasons, Defendant's Amended Motion to Dismiss Plaintiff's Complaint [DE 21] is GRANTED IN PART AND DENIED IN PART. The motion is DENIED as to Count I (for ADA disability discrimination), Count II (for violations of the FMLA), and Count IV (for intentional infliction of emotional distress), and these claims remain pending. The motion is GRANTED as to Count III (for invasion of privacy) which is DISMISSED WITHOUT PREJUDICE. Hogan is granted leave to re-file and cure the pleading deficiencies within 30 days from the date of this Order. Should Hogan file an amended complaint, the deadline for NIPSCO to answer or otherwise respond to Hogan's complaint will be within 14 days after service of the amended pleading consistent with Fed. R. Civ. P. 15(a)(3). Should Hogan choose not to file an amended complaint, the deadline for NIPSCO to respond to Hogan's initial

17

complaint shall be July 9, 2020.  Finally, Defendant's Motion to Dismiss Plaintiff's Complaint, and in the Alternative, for a More Definite Statement [DE 13], is DENIED AS MOOT.

SO ORDERED.

ENTERED: May 26, 2020.

                                        /s/   Philip P. Simon
                                      PHILIP P. SIMON, JUDGE
                                      UNITED STATES DISTRICT COURT